WALLACH, Circuit Judge,
dissenting-in-part.
While the majority opinion correctly recognizes that claim terms “are generally given their ordinary and customary meaning,” Phillips v. AWH Corp., 415 F.3d 1303, 1312 (Fed.Cir.2005) (en banc), it ignores the ordinary and customary meaning of the claim term “way point(s)” in U.S. Patent No. 5,987,377 (“the '377 Patent”). For this reason, I respectfully dissent-in-part.
I.
As the majority opinion correctly recites, claim terms “are generally given their ordinary and customary meaning ... [which] is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention.” Id. at 1312-13 (internal citations and quotation marks omitted). The majority opinion also acknowledges the two exceptions to this rule: (1) when a patentee acts as his or her own lexicographer by articulating a definition in the specification; or (2) when the patentee disavows the full scope of the ordinary and customary meaning of the claim term in the specification or during patent prosecution. Thorner v. Sony Computer Entm’t Am. LLC, 669 F.3d 1362, 1365 (Fed.Cir.2012) (citing Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1580 (Fed.Cir.1996)).
The '377 Patent discloses a system in which a remotely-located dispatch generates destination information for a vehicle, while a mobile unit in the vehicle determines vehicle position and calculates an *645 “expected time of arrival at a destination. '377 Patent col. 1 11. 52-65. The '377 Patent also describes using “way points” “to determine whether the operator of [a] vehicle ... has driven out of route” or “to more accurately calculate actual road distance.” Id. col. 9 11. 6-8, 39. In doing so, the '377 Patent uses the term “way point(s)” according to its ordinary and customary meaning in the pertinent art. That is, in navigation, a way point, like a way station, is a point on the way to a destination.[1] As the majority opinion recognizes, “nothing in the patent shows a disavowal of claim scope or a lexicographic decision to limit the definition of this term.” Maj. Op. at 644.
Claim 1 is representative of how “way point(s)” is used in the '377 Patent’s claims: “the mobile unit further operable to determine in response to the vehicle position the expected time of arrival of the vehicle at a way point identified by the destination information.” '377 Patent col. 15 11. 7-12. The claims also describe traveling along “a predetermined route specified by the way points,” id. col. 15 11. 19-20, col. 15 11. 26-27, col. 16 1. 3, col. 16 11. 9-10, col. 16 11. 53-54, col. 16 11. 60-61, col. 17 11. 58-59, col. 19 11. 22-23, col. 20 11. 49-50, and include systems “where in the way points comprise highway crossings,” id. col. 15 11. 16-17, col. 15 U. 66-67, col. 16 11. 48-49, col. 17 11. 36-37, col. 19 11. 5-6, col. 201. 42.
Besides the use of the term “way point(s)” in the claim language itself, the only part of the specification that discusses way point(s) is in the description of Figure 2, reproduced below. Nowhere else are way points discussed.
[[Image here]]
*646 Id. Fig. 2.
According to the specification, Figure 2 “illustrates a system -10a for determining expected times of arrival at a plurality of destinations.... In this embodiment of the present invention, the destination information generated by dispatch 20 includes several destinations and corresponding appointment times,” id. col. 8 11. 28-36, and “mobile unit 42 determines the expected times of arrival of vehicle 40 at destinations C, D, and E,” id. col. 8 11. 43^45.
In the context of this embodiment, the specification describes “[a] problem that trucking companies have often faced,” namely, “that operators of trucks, either intentionally or unintentionally, drive considerable distances from their assigned routes. Because trucking companies must pay for the additional fuel and maintenance expenses associated with the increased mileage, these out-of-route miles are extremely costly to trucking companies.” Id. col. 8 I. 66-col. 9 1. 5. Subsequently, in the first instance where “way point(s)” is used in the patent, the specification states:
To alleviate this problem, destinations C and D may be used as way points to determine whether the operator of vehicle 40 has driven out of route 52a specified in the destination information generated by dispatch 20. Referring to FIG. 2, dispatch 20 generates destination information specifying that vehicle 40 is to proceed to destination E along route 52a, thus passing through way points C and D. Mobile unit 42 may be configured to update dispatch 20 when vehicle 40 has reached a way point. In this way, dispatch 20 may be notified that vehicle 40 is still in route.
Id. col. 9 11. 5-14 (emphases added). In addition, still in the context of the embodiment in Figure 2, the patent describes an alternate use of “way point(s)”:
Besides reducing out-of-route mileage, the use of intermediate way points improves the calculation of expected time of arrival. Specifically, the actual distance between the position of the vehicle 40 and the destination may not be the road distance. Way points may be used as intermediate points between the position of the vehicle 10 and the destination in order to more accurately calculate actual road distance.
Id. col. 9 11. 33-39 (emphasis added).
Relying on this written description, the district court construed “way point(s)” as “intermediate point(s) on the way to the final destination (and not the final destination itself).” Vehicle IP, LLC v. AT & T Mobility, LLC, No. 09-1007-LPS, at 9, 2011 WL 6176205 (D.Del. Dec. 12, 2011) (J.A. 1452-66) (“Cl. Const.Op.”). The district court found support for its construction in “the language of the patent,” which “excludes a final destination from the definition of a way point” because “in a multiple-destination route (having destinations C, D, and E) ... the patent distinguishes between intermediate destinations C and D that can be used as ‘way points’ on the route and destination E.” Id. (citing '377 Patent col. 9 11. 6-8). As the district court points out, “[a] vehicle that has reached the final destination is not ‘in route.’ ” Id. This construction reflects the ordinary and customary meaning of the term in the art.
II.
Nonetheless, while correctly articulating the governing law, the majority deviates from the ordinary and customary meaning of “way point(s),” despite the absence of a lexicography or disavowal of claim scope. Specifically, the majority opinion points to the patent’s use of the term “way point(s)” in a “broad manner,” Maj. Op. at 643, to support its conclusions that “[t]he district *647 court erred in excluding final destinations from its construction of ‘way point(s)’ ” and “erred in limiting the term “way point(s)’ to intermediate destinations along a route,” id. at 643, 644.
In support, the majority opinion points to the claim language and to the written description, which it states both use “way point(s)” “in a broad manner.” Id. at 643. In particular, the majority points to language that distinguishes between “way point(s)” and “intermediate way points,” and language that “provides that ‘way points may be used as intermediate points between the position of vehicle 40 and the destination.’ ” Id. (quoting '377 Patent col. 9 11. 33-39). The majority then inexplicably concludes that “[tjhis permissive language indicates that ‘way point(s)’ may be more than just intermediate points along the route.” Id.
In so stating, the majority uses “permissive language” to broaden the term beyond its ordinary and customary meaning in the art as a point on the way to a destination. While it is not appropriate to restrict the meaning of a claim term to something less than its ordinary meaning absent explicit lexicography or clear disavowal, Retractable Techs., Inc. v. Becton, Dickinson & Co., 653 F.3d 1296, 1305 (Fed.Cir.2011), it is equally inappropriate to expand the scope of a claim term beyond such a meaning. The majority does just that in holding “that the proper construction of ‘way point(s)’ is ‘a geographical point of reference or destination along a route.’ ” Maj. Op. at 643^44 (emphasis added). Defining “way point(s)” as including final destinations is not part of the term’s ordinary and customary meaning, and is unworkable in the context of navigation, as explained below.
III.
The majority also finds support for its unusual construction of “way point(s)” in the specification’s description of Figure 2, which it claims supports the notion that a final destination may also be used as a way point. See '377 Patent col. 9 11. 5-12. The majority states “this portion of the written description focuses on determining whether a vehicle has driven outside of the intended route,” and “[djoing so requires looking to way points C and D because they are intermediate to the starting point and destination.... Nothing about this example excludes the final destination E from also being viewed as a ‘way point.’ ” Maj. Op. at 643^44. However, the majority overlooks the fact that point E cannot be used as a way point, either “to determine whether the operator of [a] vehicle ... has driven out of .route” as in this portion of the specification, or “to more accurately calculate road distance,” '377 Patent col. 9 11. 6-8, 1. 39. It is unclear why point E, which the patent characterizes as “destination E,” would be considered a way point, in conflict with the ordHiary and customary meaning of “way point(s),” when it cannot fulfill the function of that claim term.
In contrast to the majority’s view, the portion of the specification it quotes does not demonstrate that “way point(s)” includes a final destination. Describing Figure 2, the specification states “dispatch 20 generates destination information specifying that vehicle 40 is to proceed to destination E along route 52a, thus passing through way points C and D.” Id. col. 9 11. 9-12. ■ This statement, describing “way points” as intermediate points on the way to the destination, comports with the ordinary and customary meaning of term and does not evince a clear lexicography or disavowal of claim scope.
This conclusion is also made clear by the specification’s description of “way point(s)” as points on the way to a destination. Id. *648 col. 9 11. 37-39 (“Way points may be used as intermediate points between the position of vehicle 40 and the destination in order to more accurately calculate actual road distance”). Furthermore, the specification does not use the words “destination” and “way point” synonymously. In addressing multiple-destination routes, the specification refers to points C and D as destinations, id. col. 8 lb 28-65, while the part describing the use of way points distinguishes between a way point and a destination: “vehicle 40 is to proceed to destination E along route 52a, thus passing through way points C and D,” id. col. 9 11. 10-12 (emphases added). The written description does not lend support to a construction that would alter the ordinary and customary meaning of “way point(s).”
IV.
Finally, in regard to the single-destination embodiment of Figure 1 of the '377 Pate^, as the district court noted, the '377 Patent issued as a continuation of U.S. Patent No. 5,724,243 (“the '243 Patent.”). The claims of the '243 Patent were each directed to determining the “expected time of arrival” at “the destination,” e.g., '243 Patent col. 15 11. 10-11, while the claims of the '377 Patent each determine the “expected time of arrival” at a “way point,” e.g., '377 Patent col. 15 11. 10-11; see Cl. Const. Op. at 10 (“[T]he '377 patent claims are directed at determining expected time of arrival at a way point, while its parent patent '243 claims are directed at calculating ‘the expected time of arrival of the vehicle at the destination.’”). Thus, the district court concluded that since the '243 Parent Patent already covers the single-destination embodiment, it was unremarkable that the '377 Patent does not. Indeed, it is unclear how this embodiment fulfills the “plurality of way points” requirement of each independent claim of the '377 Patent. Even if the destination were considered a way point, in order to meet the claim limitations, the point of origin would also have to be considered a way point. Such a construction is not part of the term’s ordinary and customary meaning as understood by a skilled artisan; it is simply bizarre in the context of navigation.
Nonetheless, that the patentee included the Figure 1 embodiment does not serve as evidence that the patentee “ ‘clearly set forth a definition of the disputed claim term’ other than its plain and ordinary meaning.” Thorner, 669 F.3d at 1365 (quoting CCS Fitness, Inc. v. Brunswick Corp., 288 F.3d 1359, 1366 (Fed.Cir.2002)); see also id. (“It is not enough for a paten-tee to simply disclose a single embodiment or use a word in the same manner in all embodiments, the patentee must ‘clearly express an intent’ to redefine the term.” (quoting Helmsderfer v. Bobrick Washroom Equip., Inc., 527 F.3d 1379, 1381 (Fed.Cir.2008))). Nor does the inclusion of the single-destination embodiment “‘demonstrate [an] intent to deviate from the ordinary and accustomed meaning of [way point(s) ] ... by ... representing a clear disavowal of claim scope.’ ” Id. at 1366 (quoting Teleflex, Inc. v. Ficosa N. Am. Corp., 299 F.3d 1313, 1325 (Fed.Cir.2002)).
V.
In the absence of express lexicography or clear disavowal, “way point(s)” should be given its ordinary and customary meaning in the art. Because the majority fails to do so, but rather broadens the scope of the term beyond its ordinary and customary meaning, I respectfully dissent.

. Indeed, the United States Army has for decades used intermediary points between points of origin and destinations to assist with, among other things, calculating the distance to a final destination. See, e.g., Department of the Army, Field Manual 21-26: Map Reading 37-41 (1956); Department of the Army, Field Manual 21-26: Map Reading and Land Navigation App. J (1993).